# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | |
|---|---|
| **DOMINICK LAVAR DANIELS** | **CIVIL ACTION NO. 08-1379-P** |
| **VERSUS** | **JUDGE HICKS** |
| **BOSSIER PARISH MEDIUM SECURITY FACILITY, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

## REPORT AND RECOMMENDATION

In accordance with the standing order of this Court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

## STATEMENT OF CLAIM

Before the Court is a civil rights complaint filed in forma pauperis by pro se plaintiff Dominick Lavar Daniels ("Plaintiff"), pursuant to 42 U.S.C. § 1983.  This complaint was received and filed in this Court on September 16, 2008.  Plaintiff is incarcerated at the Bossier Parish Medium Security Facility in Pain Dealing, Louisiana, and he complains his civil rights were violated by prison officials.  He names the Bossier Parish Medium Security Facility, Larry C. Dean, Edward Milner, Captain Gray and Nurse Burton as defendants.

Plaintiff claims that Larry C. Dean hired unprofessional staff members who placed his life in danger.  He claims that on July 15, 2008, he was transferred from the maximum security facility to the medium security facility.  He claims Lt. Milner called him to the front to take a drug test.  He claims he was told to leave his property in Dorm D-4.  He claims that

when he returned to the dorm, his property was missing.

Plaintiff claims he asked for a grievance form so he could file a complaint about the missing property, but was told that there were none.  He claims a sergeant told him that if he asked again for a grievance form, he would be beaten, placed in the hole and 180 days of his good time credits would be taken from him.  Plaintiff claims he fears he will be beaten for filing this complaint.

Plaintiff claims the prison officials throw legal papers in the trash.  He claims memos are posted in the dorm instructing inmates to write a kite and not contact the courts regarding their cases.  Plaintiff claims Sgt. Toloso strongly checked him for writing to the Warden regarding the law library and contacting the court regarding his lawyer.  Plaintiff claims that on May 15, 2008, Sgt. Porter denied his request to go to the law library.  He claims that on May 16, 2008, Sgt. Toloso denied his request to go to the law library.  Plaintiff claims that on June 13, 2008, Sgt. Bannet denied his request to go to the law library.

Plaintiff claims his dorm is not properly ventilated and as a result is filled with germs.  He claims the dorm only has toilets and no urinals.  He claims there is no bleach in the dorm for cleaning.  He claims the sprinkler system is rusted.  Plaintiff claims he has caught a cold twice and suffered flu like symptoms because of the improper ventilation and lack of cleaning supplies.  He claims his mucus was bloody when he blew his nose.

Plaintiff claims inmates are charged $.42 for a stamp and $.23 for an envelope.  He claims many inmates cannot afford to pay this.  Plaintiff claims he had to sell one of his meals in order to buy a stamp to mail his mother a letter requesting more money.  He claims

he has had to beg people for soap, toothpaste, and paper.

Plaintiff claims Nurse Barton does not test incoming inmates for HIV, TB, and hepatitis.  He claims that on September 3, 2008, Nurse Burton tested all the inmates in Dorm D-4 and 11 inmates tested positive for TB.

Plaintiff, a Muslim, complains there are no Islamic call-outs on Fridays for Muslims to pray altogether facing the Kaba in Mecca.  He claims there are Christian call-outs.  He claims that on June 24, 2008, Sgt. Porter denied his request for a Holy Qur'an.  He claims preachers give Christian inmates Bibles.  He claims Muslim inmates must buy the Holy Qur'an from the publisher.

Plaintiff claims that on July 15, 2008, Sgt. Nugent and Ms. Stacey called him out because he was asking about missing store items.  Plaintiff claims that on July 18, 2008, Jim Jackson placed him on lock-down for three days because his cellmate was under his covers.

Plaintiff claims that on September 8, 2008, he was transferred to Dorm C-1 and forced to work at hard labor.  He claims he must walk six to seven miles a day.  He claims he is only fed a peanut butter sandwich, a bologna sandwich and a bag of chips.  He claims he is threatened with lock-down, beatings, and loss of good time credits if he does not walk the required number of miles.

Plaintiff claims he is taken from his dorm for hours at a time and other inmates are allowed to cast lots for his store items and white clothes.

As relief, Plaintiff seeks monetary compensation and a transfer to another facility.

## LAW AND ANALYSIS

**Property**

Plaintiff claims that on July 15, 2008, his property was taken from his dorm when he went to take a drug test. He also claims inmates took his store items and clothes when he was away from his dorm.  Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities secured by the Constitution or laws of the United States" by a person acting under color of state law.  Accordingly, the initial inquiry and threshold concern of the reviewing court is whether Plaintiff's constitutional rights have been violated.  See Parratt v. Taylor, 451 U.S. 527, 107 S. Ct. 1908 (1981).

The property of which Plaintiff was allegedly deprived can constitute "property" within the meaning of the Due Process Clause of the Fourteenth Amendment and its loss is worthy of redress if the loss implicates constitutional rights.  See id. at 542, 107 S. Ct. at 1916.  However, the Fourteenth Amendment is not a font of tort law to be superimposed upon whatever systems may already be administered by the States.  See Baker v. McCollan, 433 U.S. 137, 99 S. Ct. 2689 (1979).  A constitutional deprivation of property without due process of law, as differentiated from a state tort law claim, must be intentional and plaintiff must allege specific facts which support such a conclusion.

Absent an intentional deprivation of property where the charge only supports a negligent failure by defendants, a constitutional deprivation does not lie.  "[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty or property."  Daniels v. Williams, 474 U.S. 327, 328, 106 S. Ct. 662,

663 (1986).  Moreover, even in instances where intentional deprivation occurs where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated.  See Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 3204 (1984), on remand, 744 F.2d 22 (4th Cir. 1984); Marshall v. Norwood, 741 F.2d 761, 764 (5th Cir. 1984).

Mere assertions of intentionality are not enough in the absence of specific facts supporting the assertions and "even if the taking were intentional, the state could afford the [plaintiff] due process by providing a post-deprivation remedy for the redress of the unforeseeable, unauthorized injury... alleged." Lewis v. Woods, 848 F.2d 649, 652 (5th Cir. 1988).  Louisiana law provides Plaintiff the opportunity to seek redress for his loss, whether intentional or negligent.  See La. Civ. Code art. 2315.

Accordingly, Plaintiff's claims regarding the taking of his property are not cognizable under Section 1983 and should be dismissed with prejudice.

**Verbal Threats**

Plaintiff claims a sergeant threatened to beat him, place him in the hole, and take 180 days of his good time credits if he asked for a grievance form after being told there were none.  He further claims he was threatened with lock-down, beatings, and loss of good time credits if he did not walk the required number of miles for his job.  The Eighth Amendment prohibition of cruel and unusual punishment proscribes wanton infliction of unnecessary pain upon a prisoner by prison officials.  However, verbal abuse and harassment do not constitute cruel and unusual punishment as contemplated by the Eighth Amendment, and

allegations of such, without more, are insufficient grounds for relief under 42 U.S.C. § 1983.

See Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979); Ellingburg v. Lucas, 518 F.2d 1196

(8th Cir. 1975).  Moreover, the Fifth Circuit held that "mere threatening language and

gestures of a custodial officer do not, even if true, amount to constitutional violations."

Lynch v Cannatella, 810 F.2d 1363, 1376 (5th Cir. 1987) (citing McFadden v. Lucas, 713

F.2d 143, 146 (5th Cir. 1983)).  Even if Plaintiff has been subjected to verbal threats as

alleged, this claim does not amount to harm sufficient to constitute a constitutional violation.

Accordingly, Plaintiff's claims regarding verbal threats lack an arguable basis in law

and should be dismissed with prejudice as frivolous.

**Conditions of Confinement**

Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which

provides redress for persons "deprived of any rights, privileges or immunities" by a person

acting under color of state law.  The particular right protected under 42 U.S.C. § 1983 in

matters which concern alleged unconstitutional conditions of confinement is the Eighth

Amendment prohibition against cruel and unusual punishment.  Under the Eighth

Amendment, prison officials are required to provide humane conditions of confinement,

ensuring that inmates receive adequate food, clothing, shelter and medical care, and must

take reasonable measures to guarantee safety of inmates.  See Farmer v. Brennan, 511 U.S.

825, 114 S.Ct. 1970 (1994).

An Eighth Amendment claim has two required components. See Wilson v. Seiter, 501

U.S. 294, 298, 111 S.Ct. 2321, 2324 (1991).  First, the deprivation alleged must be

sufficiently serious. See id., 111 S. Ct. at 2324.  "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave" to constitute cruel and unusual punishment. Id., 111 S. Ct. at 2324 (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399 (1981)).  Furthermore, this Court should consider the duration and the totality of the specific circumstances that constituted the conditions of Plaintiff's confinement.  Palmer v. Johnson, 193 F.3d 346 (5th Cir. 1999).

Second, the prison official must have acted with a sufficiently culpable state of mind. See id. at 305, 111 S. Ct. at 2328; Farmer, 511 U.S. at 838, 114 S. Ct. at 1979.  In prison condition of confinement cases, that state of mind is deliberate indifference, which the Supreme Court recently defined as knowing of and disregarding an excessive risk to inmate health or safety.  See id., 114 S. Ct. at 1979.

In this case, after a thorough review of Plaintiff's complaint, read in a light most favorable to him, the Court finds that the facts alleged do not support a finding that Defendants' conduct was sufficiently harmful enough to deprive him of life's basic necessities.  See Wilson, 501 U.S. at 298, 111 S. Ct. at 2324.

Plaintiff claims his dorm is not properly ventilated and as a result is filled with germs. Plaintiff  claims his dorm has only toilets and no urinals.  He claims the cleaning supplies are inadequate because there is no bleach.  He claims the sprinkler system is rusted.  Plaintiff claims he is forced to work at hard labor and walk six to seven miles a day.  He further claims he is only fed a peanut butter sandwich, a bologna sandwich, and a bag of chips.

After  considering  the  totality  of  the  specific  circumstances  that  constitute  the

conditions of Plaintiff's confinement, this Court finds that the facts alleged do not support a finding that Defendants' conduct was sufficiently harmful enough to deprive him of life's basic necessities.  See Wilson, 501 U.S. at 298, 111 S. Ct. at 2324.  The Court finds that Plaintiff's claims standing alone, simply do not rise to the level of cruel and usual punishment as defined by the jurisprudence.  Plaintiff does not allege that he was forced to perform physical labor which was beyond his strength, endangered his life, or caused undue pain.  Furthermore, such conclusory allegations of inadequate ventilation, without more, implicate no federal constitutional right. Johnson v. Texas Board of Criminal Justice, 281 Fed. Appx. 319, 321 (5th Cir.2008); Johnson v. Thaler, 202 F.3d 265 (5th Cir. 1999); Parker v. Smith, 22 F.3d 1094 (5th Cir. 1994).  Thus, the Court does not consider the deprivations alleged to be sufficiently serious.

Accordingly, the conditions alleged do not rise to the level of cruel and unusual punishment and should be dismissed with prejudice as frivolous.


**Access to the Courts Claims**

Plaintiff claims prison officials throw legal papers in the trash.  He further claims inmates are instructed to write kites regarding their cases instead of contacting the courts. He claims prison officials denied him access to the law library several times.

Prisoners  have a constitutional right of meaningful access to the courts. Degrate v. Godwin, 84 F.3d 768, 768-69 (5th Cir.1996) (quoting Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977)).  However, this constitutional guarantee is not

without limitation.  <u>Lewis v. Casey</u>, 518 U.S. 343 (1996)  (quoting <u>Turner v. Safley</u>, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261-62, 96 L.Ed.2d 64 (1987)).

In <u>Lewis v. Casey</u>, 518 U.S. 343, (1996), the Supreme Court reviewed its holding in <u>Bounds v. Smith</u>, 430 U.S. 817, (1977) which is the source of a prisoner's constitutional right to "meaningful access to the courts."  While the Supreme Court reaffirmed a prisoner's right of access to the courts in <u>Lewis</u>, the Court limited the parameters of <u>Bounds</u> and set forth a standard to be applied when determining whether to grant relief for an access to the courts violation.  In so holding, the Court noted that a prisoner must show an actual injury, explaining that this requirement is derived from the doctrine of standing.  <u>Lewis</u>, 116 S.Ct. at 2179.  The Court used the analogy of a prisoner who is denied access to that of a healthy prisoner who has been deprived of medical treatment.  In both cases, neither the access deprived prisoner nor the healthy prisoner have sustained constitutional injury, and thus, are not entitled to relief under Section 1983.  The Court emphasized that the court's role is to provide relief to claimants who have suffered actual harm, not to interfere with the management of prisons.

Accordingly, the Fifth Circuit has held that a prisoner cannot prevail on an access to the courts claim without proving an actual injury in non-frivolous litigation as a result of the defendant's alleged unconstitutional conduct.  <u>Ruiz v. United States</u>, 160 F.3d 273, 275 (5th Cir. 1998); <u>Chriceol v. Phillips</u>, 169 F.3d 313, 317 (5th Cir. 1999).

Application of the actual injury requirement to the instant case supports a finding that Plaintiff's claims are frivolous.  Plaintiff has failed to demonstrate that he was substantially

delayed in obtaining judicial review or denied judicial review of his claims as a result of the alleged denial of access to the court claims.   Thus, Plaintiff has failed to state any actual injury.    Accordingly, Plaintiff's claims regarding the denial of access to the court should be dismissed with prejudice as frivolous.

**Canteen Prices**

Plaintiff complains that many inmates cannot afford the price of an envelope and stamp.  He also claims that he has not been able to afford soap, toothpaste, and paper.  The law is clear that inmates have no constitutionally protected interest in purchasing goods through the prison commissary at the cheapest price possible.  See Grice v. Blanco, 2007 WL 2908826 (W.D. La. 7/18/07) citing  Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ("[T]he fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed."); French v. Butterworth, 614 F.2d 23, 25 (1 st Cir.1980)(holding "there is simply no legal basis for a demand that inmates be offered items for purchase at or near cost"); McCall v. Keefe Supply Co., 71 Fed. Appx. 779, 780 (10th Cir.2003) (stating that an inmate's claim that prison commissary charged "outrageous" prices for goods purchased through the prison commissary failed to state a constitutional claim).  Furthermore, Plaintiff has not alleged that he had to do without soap, toothpaste, and paper.  Accordingly, Plaintiff's claim should be dismissed with prejudice as frivolous.

**Screening for Communicable Diseases**

Plaintiff next complains that incoming inmates are not routinely tested for communicable diseases HIV, TB, and hepatitis.  However, it is clear that screening of all inmates is not constitutionally required. See Gibbs v. Grimmette, 254 F.3d 545, 550 (5th Cir.2001); Carter v. Strain, 2009 WL 3231826 at 4 (E.D.La. Oct. 1, 2009).   Accordingly, this claim must be dismissed with prejudice as frivolous.

**Religion**

Plaintiff claims that there are Christian call-outs.  He complaints that there are no Islamic call-outs on Fridays for Muslims to pray all together facing the Kaba in Mecca.  He claims Muslim inmates must buy the Holy Qur'an from the publisher, but Christian inmates receive Bibles from preachers.

Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. Nevertheless, lawful incarceration, by its very nature, brings about the necessary withdrawal or limitation of many privileges and rights. The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

The standard for evaluating an inmate's claim that a prison regulation or practice improperly restricts his right to the free exercise of his religion requires the court to evaluate the regulation or practice in order to determine whether it "is reasonably related to legitimate penological interests." Id. at 349. The "reasonableness" of a regulation or practice is evaluated based upon the following inquiry: (1) Is there a valid, rational connection between

the prison practice and the legitimate governmental interest put forward by prison officials to justify the practice; (2) Are there alternative means of exercising the right that remain open to prison inmates, that is, are inmates allowed other means to express their religious beliefs on a general level; (3) What impact will accommodation of the asserted constitutional right have on guards and other inmates and on the allocation of prison resources generally; and, (4) Are alternatives to the prison practice available that would accommodate the inmates' rights at a de minimis cost to valid penological interests.  Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), Green v. Polunsky, 229 F.3d 486, 489-90 (5th Cir.2000). Each factor need not be considered, and the factors need not be weighed equally. Scott v. Mississippi Dep't of Corrections, 961 F.2d 77, 80 (5th Cir.1992).

With regard to the first prong of the Turner test, Plaintiff has not alleged that prison officials have prohibited him from practicing his religion.  He does not claim that he was not individually allowed to pray on Fridays facing the Kaba in Mecca.  The second and fourth prongs of the Turner test, address whether or not "alternative means" of practicing his religion have been made available to the plaintiff.  In analyzing the availability to inmates of "alternative means" of exercising their religion, however, "[t]he pertinent question is not whether the inmates have been denied specific religious accommodations, but whether, more broadly, the prison affords the inmates opportunities to exercise their faith." Freeman v. Texas Department of Criminal Justice, 369 F.3d 854, 861 (5th Cir.2004); Adkins v. Kaspar, 393 F.3d 559, 564 (5th Cir.2004). Plaintiff has not claimed that he was denied the right to practice his religion at any time.

In O'Lone v. Estate of Shabazz, supra., the inmate-plaintiffs complained that they were not allowed to attend the weekly Muslim congregational service held on Friday evenings because of their assignments to work details outside the main prison grounds. O'Lone v. Estate of Shabazz, 482 U.S. at 345-46. The Supreme Court considered the evidence supplied by the prison administration regarding security needs, rehabilitative needs, and the impact of alternative accommodations; this evidence was evaluated in the light of those rights actually retained by the inmates to practice their religion. The Court then noted that the plaintiff-inmates were not deprived of all forms of religious exercise. Based upon these facts, the Supreme Court held that the "ability on the part of [the inmates] to participate in other religious observances of their faith supports the conclusion that the restrictions at issue here were reasonable." Id. at 352.

To the extent Plaintiff implies that his Equal Protection rights were violated under the Fourteenth Amendment with respect to his ability to practice his religion in a manner similar to that permitted by Christians at the Bossier Parish Medium Security Facility, such a claim likewise lacks merit. This is so because, "[t]o succeed on his equal protection claim, [plaintiff] must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated." Muhammad v. Lynaugh, 966 F.2d 901, 903 (5th Cir.1992) (citing McCleskey v. Kemp, 481 U.S. 279 (1987)). The Fourteenth Amendment requires that all persons similarly situated shall be treated alike, but it does not demand "that every religious sect or group within a prison-however few in numbers-must have identical facilities or personnel." Cruz v. Beto, 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972).

Furthermore, the Plaintiff does not allege that Muslim clerics have been forbidden from giving Muslim inmates a copy of the Holy Qur'an.  Also, Plaintiff does not allege that Christian inmates are allowed Friday night call-outs.

Accordingly, the undersigned concludes that Plaintiff's First Amendment free exercise of religion claim and equal protection claims are frivolous.

**Lock-Down**

Plaintiff claims that he was called out because he asked questions about missing store items.  He also claims he was placed on lock-down for three days because of the actions of his cellmate.

To the extent Plaintiff contends he was punished without due process, that claim is not cognizable.  In Sandin v. Connor, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court clarified when due process protections attach to the prison disciplinary process.  The Supreme Court held that the Due Process Clause of the Fourteenth Amendment does not afford an inmate a protected liberty interest that would entitle the inmate to procedural protections in the disciplinary process when the maximum sanction the inmate could receive does not "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest" and the duration of the prisoner's original sentence is not affected.  Id. 132 L.Ed.2d at 431.

Under the guidance provided by Sandin, the Fifth Circuit has held that as a general rule, only sanctions which result in loss of good time credit or which otherwise directly and adversely affect release will implicate a constitutionally protected liberty interest.  Orellana

v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995).  Moreover, in commenting on Sandin, the Fifth Circuit noted that liberty interests which are protected by the Due Process Clause are generally limited to actions which affect the quantity of time rather than the quality of time served by a prisoner.  Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997) citing Sandin, 115 S.Ct. at 2297.

Plaintiff does not allege that the disciplinary action affected the duration of his sentence or that the disciplinary sentence was atypical of the prison environment.  To the contrary, Plaintiff's allegations concern changes in the conditions of confinement which are far from "extraordinary."  This Court finds that under Sandin, Orellana and Madison, lock-down for three days and being called out does not constitute the type of atypical punishment that presents a significant deprivation which would implicate due process concerns.  Accordingly, Plaintiff's due process claims lack an arguable basis in law and should be dismissed with prejudice as frivolous.

**Sheriff Larry C. Dean**

Plaintiff claims that Sheriff Larry C. Dean hired unprofessional staff members.  He claims these unprofessional staff members placed his life in danger.  Supervisory officials cannot be held vicariously liable for the actions of their subordinates pursuant to 42 U.S.C. § 1983.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-95, 98 S.Ct. 2018, 2036-38 (1978); Bigford v. Taylor, 834 F.2d 1213, 1220 (5th Cir.), cert. denied, 488 U.S. 851 (1988); Thibodeaux v. Arceneaux, 768 F.2d 737, 739 (5th Cir. 1985).  A supervisory official my be held liable only if he (1) affirmatively participates in acts that cause constitutional

deprivation, or (2) implements unconstitutional policies that causally result in injury to the plaintiff.  See Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987); see also Grandstaff v. City of Borger, 767 F.2d 161, 169-70 (5th Cir. 1985), cert. denied, 480 U.S. 916 (1987). Plaintiff does not allege that Sheriff Larry C. Dean personally participated in the events of which he complains.  Rather he alleges that Sheriff Larry C. Dean hired unprofessional staff members who placed his life in danger.  Plaintiff does not allege the necessary casual link to demonstrate that Sheriff Dean knew when he hired the staff members that they were likely to inflict the alleged injuries suffered by Plaintiff.  See Board of County Comm'r of Bryan County, Oklahoma v. Jill Brown, 520 U.S. 397, 412, 117 S.Ct. 1382, 1392, 137 L.Ed.2d 626 (1997).  Plaintiff seeks to impose purely supervisory liability on Sheriff Dean and fails to state a claim for violation of his civil rights.  Accordingly, Sheriff Larry Dean should be dismissed from this action with prejudice.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this Court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed.  See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985).  District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact.  See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993);

Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

For the reasons heretofore stated, the Court finds that the IFP complaint based upon a violation of Plaintiff's civil rights lacks an arguable basis in law.

Accordingly;

**IT IS RECOMMENDED** that Plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e).

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objection within ten (10) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party.  See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 23 day
of August 2011.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE